1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
For the Northern District of California

## UNITED STATES  DISTRICT COURT

### Northern District of California

San Francisco Division

| | |
|---|---|
| JEFFREY MARTINS, | No. C 13-00591 LB |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., | [Re: ECF No. 17] |
| Defendants. | |

### INTRODUCTION

Plaintiff Jeffrey Martins, an immigration attorney who represents persons seeking asylum in the United States, brought claims against the United States Citizenship and Immigration Services ("USCIS"), Alejandro Mayorkas in his official capacity as Director of the USCIS, the United States Department of Homeland Security ("DHS"), and Janet Napolitano, in her official capacity as Secretary of DHS (collectively, "Defendants"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., to receive, pursuant to his FOIA requests, the "interview notes" taken by Asylum Officers when they interviewed his clients.  *See generally* Complaint, ECF No. 1.[1]  These interview notes, which are kept in his clients' "Alien Files" ("A-Files"), are being withheld by Defendants on the ground that

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 13-00591 LB
ORDER

1  they are protected by the deliberative process privilege and therefore are covered by Exemption 5 of

2  FOIA, 5 U.S.C. § 552(b)(5). *See id.* ¶ 5. Mr. Martins moves for a preliminary injunction enjoining

3  Defendants from asserting Exemption 5 and requiring them to promptly produce the interview notes

4  so that Mr. Martins can use them to prepare for his clients' upcoming removal hearings. Motion,

5  ECF No. 17. Defendants oppose the motion.[2] Opposition, ECF No. 20. Upon consideration of the

6  record in the case and the arguments of counsel at the July 3, 2013 hearing, the court **GRANTS** Mr.

7  Martins's motion and orders the expedited *Vaughn* index described below.

**STATEMENT**

8

9  **I. THE ASYLUM PROCESS**

10      The following description of the asylum process is taken from the allegations in Mr. Martins's

11  complaint and the evidence he submitted in support of his motion for a preliminary injunction.

12      Asylum is a form of protection for persons who have suffered persecution or have a

13  well-founded fear of persecution on account of race, religion, nationality, membership in a particular

14  social group, or political opinion. Complaint, ECF No. 1 ¶ 16. A grant of asylum gives the

15  individual legal immigration status in the United States. *Id.* A person who is not in removal

16  proceedings may apply for asylum affirmatively, and one who is in removal proceedings may apply

17  as a defense to removal. *Id.* ¶ 17; Martins Declaration, ECF No. 17 ¶ 9. Affirmative asylum seekers

18  commence the application process by mailing a completed Form 1-589 to one of four USCIS Service

19  Centers. Complaint, ECF No. 1 ¶ 17; Martins Declaration, ECF No. 17 ¶ 9. The application then is

20  forwarded to the USCIS Asylum Office that has jurisdiction over the case, and the applicant is

21  scheduled to appear for an interview before an Asylum Officer. Complaint, ECF No. 1 ¶ 17;

22

23  _____

24      [2] In their opposition, Defendants also moved (1) for partial judgment on the pleadings on the
   grounds that only FOIA allows the requested relief against only the agencies (not the individuals),
25  (2) for dismissal of claims against certain federal defendants, and (3) to quash a discovery request.
   *See* Opposition, ECF No. 20. The court denied without prejudice Defendants' motions on the
26  ground that the court's scheduling order contemplated only Mr. Martins's motion for a preliminary
   injunction and that Defendants should file their motion on a properly-noticed five-week schedule
27  after the court rules on Mr. Martins's motion for a preliminary injunction. 6/19/2013 Order, ECF
   No. 22. Defendants' motion was filed only three weeks before the July 3, 2013 hearing. *See* ECF
28  No. 20.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Martins Declaration, ECF No. 17 ¶ 9.

2       An asylum applicant may appear for the interview on his or her own.  Complaint, ECF No. 1 ¶

3   18; Martins Declaration, ECF No. 17 ¶ 10.  Alternatively, at his or her own expense, an applicant

4   may be represented in applying for asylum, including at the interview before the Asylum Officer.

5   Complaint, ECF No. 1 ¶ 18; Martins Declaration, ECF No. 17 ¶ 10.  The applicant is responsible for

6   bringing an interpreter to the interview if one is needed.  Complaint, ECF No. 1 ¶ 18; Martins

7   Declaration, ECF No. 17 ¶ 10.  At the interview, the Asylum Officer reviews the application with

8   the applicant and questions the applicant under oath.  Complaint, ECF No. 1 ¶ 19; Martins

9   Declaration, ECF No. 17 ¶ 11.  As a general matter, questions are used to elicit information bearing

10   on the applicant's eligibility for asylum.  Complaint, ECF No. 1 ¶ 19; Martins Declaration, ECF No.

11   17 ¶ 11.  Some matters must be explored with every applicant — factors related to the elements of

12   the refugee definition, those related to mandatory bars and bases for discretionary denials, the

13   applicant's current immigration status, and factors that relate to the one-year filing deadline.

14   Complaint, ECF No. 1 ¶ 19; Martins Declaration, ECF No. 17 ¶ 11.  Some questions will be

15   essentially the same from applicant to applicant, such as whether the person has persecuted others or

16   previously applied for asylum, while other questions probe the particular facts underlying the

17   individual applicant's claim for asylum.  Complaint, ECF No. 1 ¶ 19; Martins Declaration, ECF No.

18   17 ¶ 11.  While conducting the interview, the Asylum Officer seeks to determine if the applicant is

19   credible.  Complaint, ECF No. 1 ¶ 19; Martins Declaration, ECF No. 17 ¶ 11.

20       Asylum interviews are not recorded.  Complaint, ECF No. 1 ¶ 20; Martins Declaration, ECF No.

21   17 ¶ 13.  The interviewing Asylum Officer is responsible for taking notes that document the

22   interview.  Complaint, ECF No. 1 ¶ 20; Martins Declaration, ECF No. 17 ¶ 13.  If present, an

23   attorney for the applicant may also take notes and retain his or her own notes.  Complaint, ECF No.

24   1 ¶ 20; Martins Declaration, ECF No. 17 ¶ 13.  An interpreter may also take notes in order to help

25   him or her provide accurate interpretation, but these notes normally are confiscated at the end of the

26   interview.  Complaint, ECF No. 1 ¶ 20; Martins Declaration, ECF No. 17 ¶ 13.

27       Asylum Officers receive training and direction about how they are to take notes of asylum

28   interviews.  Complaint, ECF No. ¶ 21; Burke Declaration, ECF No. 19 ¶ 3, Exh. A (overview of

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1   USCIS Asylum Division Training Programs, from USCIS webpage).  The USCIS Asylum

2   Division's Training Section provides training on a national level and on a local level in the field

3   offices.  Complaint, ECF No. ¶ 21; Burke Declaration, ECF No. 19 ¶ 3, Exh. A.  All Asylum

4   Officers are required to attend and complete the Asylum Officer Basic Training Course ("AOBTC"),

5   which is a national training course that is specific to asylum adjudications.  Complaint, ECF No. ¶

6   21; Burke Declaration, ECF No. 19 ¶ 3, Exh. A.  One of the AOBTC lesson modules specifically

7   addresses "Note-Taking" by interviewing Asylum Officers.  Complaint, ECF No. 1 ¶ 22, Exh. A

8   ("Interview Part 2: Note-Taking" lesson module); Burke Declaration, ECF No. 19 ¶ 4, Exh. B

9   (same).  The Note-Taking lesson module provides an overview of the purpose of the notes taken by

10  the interviewing Asylum Officer, and it details the requirements and characteristics of "proper

11  note-taking."  Complaint, ECF No. 1 ¶ 23, Exh. A; Burke Declaration, ECF No. 19 ¶ 4, Exh. B.  The

12  lesson module explains:

13          It is essential for asylum officers to take clearly written and comprehensive notes
            during the interview.  Interview notes must accurately reflect what transpired during
14          the interview so that a reviewer can reconstruct the interview by reading the interview
            notes.  In addition, the interview notes should substantiate the asylum officer's
15          decision.

16  Complaint, ECF No. 1 ¶ 23, Exh. A at 25; Burke Declaration, ECF No. 19, Exh. B at 4.

17          While it is recognized that mistakes will occur, interviewing Asylum Officers are charged with

18  taking notes that are clear, accurate, detailed, and objective.  Complaint ¶ 24, Exh. A; Burke

19  Declaration, ECF No. 19, Exh. B.  The lesson module repeatedly emphasizes that "(a) reviewer

20  should be able to reconstruct what transpired during the interview by reading the interview notes."

21  Complaint, ECF No. 1 ¶ 24, Exh. A at 25, 27, 32; Burke Declaration, ECF No. 19, Exh. B at 4, 6,

22  11.  The Officers are not required to transcribe every word that is spoken during the interview, but

23  they are instructed that their notes should accurately reflect what the Officer asks and what the

24  applicant says and further that there can be instances when having the notes include every word is

25  essential to capture the meaning of what the applicant has said.  Complaint, ECF No. 1 ¶ 24, Exh. A

26  at 26-29; Burke Declaration, ECF No. 19, Exh. B at 5-8.  When appropriate, the Asylum Officer is

27  also to note what an applicant does not say, such as when the applicant is not able to answer a

28  question.  Complaint, ECF No. 1 ¶ 24, Exh. A at 29; Burke Declaration, ECF No. 19, Exh. B at 8.

C 13-00591 LB
ORDER                                           4

1   While documenting the content of the interview, the Officer's notes must not include his or her

2   subjective opinions, suppositions, or personal inferences.  Complaint, ECF No. 1 ¶ 25, Exh. A at 27-

3   28; Burke Declaration, ECF No. 19, Exh. B at 6-7.  The note-taking lesson module states:

> Asylum officers should take care that their notes will be perceived by others as an
> accurate and objective record of the interview.  For example, even an exclamation
> point placed in reaction to a portion of the applicant's testimony may appear as a
> judgment of the applicant's claim.

7    Complaint, ECF No. 1 ¶ 25, Exh. A at 27-28; Burke Declaration, ECF No. 19, Exh. B at 6-7.

8        After the interview, separate and apart from the notes themselves, the Asylum Officer is

9   responsible for completing an assessment of the asylum applicant's claim.  Complaint, ECF No. 1 ¶

10  26; Burke Declaration, ECF No. 19 ¶ 5, Exh. C ("Decision Writing Part I: Overview and

11  Components, Focusing on 1st Three Components" lesson module on writing assessments and

12  Notices of Intent to Deny).  The assessment provides the Officer's evaluation of the applicant's

13  claim.  Complaint, ECF No. 1 ¶ 26; Burke Declaration, ECF No. 19 ¶ 5, Exh. C.  A supervisor

14  reviews all of the evidence and the interviewing Officer's assessment before a decision on the

15  application is made.  Complaint, ECF No. 1 ¶ 27.  In some cases, additional review by Headquarters

16  follows.  *Id.*  Thereafter, a given application may or may not be granted.  *Id.*

17       If asylum is not granted to the affirmative asylum applicant and the applicant otherwise does not

18  have valid immigration status in the United States, a Notice to Appear is issued to the asylum seeker

19  and the individual is referred for removal proceedings at the Immigration Court.  *Id.* ¶ 28; Martins

20  Declaration, ECF No. 18 ¶¶ 16-17.  The Referral Notice typically provides only minimal

21  information about the basis or bases for the Asylum Office's decision not to grant asylum.  *Id.* ¶ 28;

22  Martins Declaration, ECF No. 18 ¶ 17.

23       Before the Immigration Court, the applicant, now formally referred to as the "respondent," can

24  renew his or her application for asylum.  Complaint, ECF No. 1 ¶ 29.  The Immigration Judge

25  reviews the respondent's asylum case de novo.  *Id.*  The proceedings are now adversarial in nature,

26  with the respondent's application contested by an attorney working for Immigration and Customs

27  Enforcement ("ICE"), another component of the Department of Homeland Security.  *Id.*  ICE Trial

28  Attorneys prosecuting cases before the Immigration Court have access to a great deal of information

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

about respondents, including each individual's A-File, which contains all official record material for a noncitizen for whom DHS or its predecessor agency has created a record under the Immigration and Nationality Act. *Id.* ¶ 30; Martins Declaration, ECF No. 18 ¶ 20. It includes all immigration-related documents such as previously submitted applications and petitions, naturalization certificates, documents related to removals from the United States, reports of investigations, statements, correspondence, and memoranda. *Id.* Also included are the Asylum Officer notes from the asylum interview and the Asylum Officer's assessment. *Id.* ¶ 31. The government allows ICE Trial Attorneys to use the Asylum Officer interview notes as evidence in the removal proceedings. *Id.* In fact, the AOBTC Note-Taking lesson module specifically contemplates that "ICE Trial attorneys have access to the files of cases that are referred to the immigration judge or denied by the asylum officer. If interview notes are introduced to the court as evidence, the immigration judge will also see the interview notes." *Id.*, Exh. A at 4; Burke Declaration, ECF No. 19 ¶ 4, Exh. B at 4. In many cases, ICE Trial Attorneys will compare court testimony or prior written statements to the notes in an effort to identify inconsistencies, and they will use the notes to try to impeach the applicant's credibility. Complaint, ECF No. 1 ¶ 31. The AOBTC "Note-Taking" lesson module also expressly contemplates that individual respondents and their representatives will be given a copy of the Asylum Officer notes if the interview notes are introduced in proceedings before the Immigration Court. *Id.* ¶ 33, Exh. A at 4; Burke Declaration, ECF No. 19 ¶ 4, Exh. B at 4.

To prepare their clients and present their cases in the strongest manner possible, attorneys representing respondents before the Immigration Court (like Mr. Martins) frequently will submit FOIA requests to USCIS for their clients' A-Files in advance of the individual merits hearings. Complaint, ECF No. 1 ¶ 34; Martins Declaration, ECF No. 18 ¶¶ 5-8. For asylum seekers and their representatives, a FOIA request for the A-File is often the fastest way — and for many, the only practical way — to secure information from the A-File that is needed to prepare sufficiently in advance of the merits hearing. Complaint, ECF No. 34; Martins Declaration, ECF No. 18 ¶¶ 5-8. In representing an individual referred by the Asylum Office for proceedings before the Immigration Court, having the notes from the individual's interview before an Asylum Officer can be integral to

the representation the attorney will seek to provide to his or her client.  Complaint, ECF No. 1 ¶ 35;
Martins Declaration, ECF No. 18 ¶¶ 18-24.  The notes are especially important to have when an
attorney is representing an individual whom he or she did not represent before the Asylum Office.
Complaint, ECF No. 1 ¶ 35; Martins Declaration, ECF No. 18 ¶¶ 18-24.

For example, for clients he did not represent in the asylum interview, Mr. Martins uses Asylum
Officers' notes to:

- identify ways in which clients did not effectively communicate facts relevant to showing their
  eligibility for asylum;
- better prepare the clients for their hearings and determine whether additional evidence should be
  presented in support of the clients' claims;
- identify when possible inconsistencies may be emerging and question the client to develop an
  understanding of what might explain those perceived differences in the way the client has
  communicated his or her experience on different occasions;
- prepare clients for the cross-examination they will likely face from ICE Trial Attorneys; and
- assess whether the notes reflect a mistake or misunderstanding on the part of the interviewing
  Asylum Officer or simply a miscommunication between the Officer and the applicant or the
  interpreter.

Complaint, ECF No. 1 ¶ 36; Martins Declaration, ECF No. 18 ¶¶ 18-24.[3]  Conversely, when Mr.

_____

[3] Mr. Martins gives case-specific examples to illustrate these points.  For example, he represented a Somali woman who was referred for removal proceedings based on her perceived lack of credibility, in part because the Asylum Officer did not believe that the Kenyan refugee camp, where she spent time, existed.  Martins Declaration, ECF No. 18, ¶ 24.  He identified the issue from the notes and obtained proof that the camp existed, and the Immigration Judge granted asylum soon thereafter.  *Id.*; *see also id.* ¶¶ 25 (identified context of conditions in Georgia relevant to a gay man's petition for asylum), 26 (determined from notes that Asylum Officer, who referred a man from Uzbekistan for proceedings based on his failure to meet the one-year filing deadline, had not questioned the asylum seeker for the impact of trauma, which is a recognized basis for an exception for the filing deadline); with that information, the IJ granted asylum), 27 (identified and developed from notes information relevant to harassment of an elderly woman from Kyrgystan who then received asylum), 28 (learned during cross-examination in removal proceedings about challenges to gay man's credibility about his mistreatment in Tajikistan; asylum was granted only after continuance to develop the context (including his youth) to explain the perceived issues; this created delay and stress that would have been avoided with production of notes before the hearing).

Martins does not have the notes of his clients' asylum interviews, he typically must spend significant

additional time with affected clients in an effort to reconstruct their interviews from memory.

Complaint, ECF No. 1 ¶ 47; Martins Declaration, ECF No. 18 ¶¶ 18-19.  This is an extremely poor

substitute for the notes themselves for reasons that include the effects of the passage of the time and

the difficulty clients have in remembering the content of their interviews due to the stress they are

commonly under in the interviews themselves.  Complaint, ECF No. 1 ¶ 47; Martins Declaration,

ECF No. 18 ¶¶ 18.  And having to devote the additional time to this subject in meetings with clients

has a negative impact on Mr. Martins's law practice.  Complaint, ECF No. 1 ¶ 47; Martins

Declaration, ECF No. 18 ¶¶ 5, 8, 19.  The time and administrative burden involved in having to file

administrative appeals to challenge the withholding of the Asylum Officer interview notes in each

affected client's case also negatively impacts Mr. Martins's law practice.  Complaint, ECF No. 1 ¶

47; Martins Declaration, ECF No. 18 ¶¶ 5, 8, 19.

The AOBTC "Note-Taking" lesson module recognizes that Asylum Officer's notes will be

produced in response to FOIA requests at least some portion of the time such requests are submitted.

Complaint, ECF No. 1 ¶ 39, Exh. A; Burke Declaration, ECF No. 19 ¶ 4, Exh. B.  It states:

> Some asylum applicants or their representatives may obtain the notes as part of a
> Freedom of Information Act (FOIA) request.  Although generally, notes are not
> provided in response to a FOIA request, there have been occasions when they have
> been provided.

Complaint, ECF No. 1 ¶ 39, Exh. A at 4; Burke Declaration, ECF No. 19 ¶ 4, Exh. B at 4.

In the past, Mr. Martins frequently received the Asylum Officer interview notes when

his clients' A-File contents were produced in response to the FOIA requests he filed as part of his

representation of his clients.  Complaint, ECF No. 1 ¶ 40, Exh. B (sample of interview notes

(redacted) received by Mr. Martins in response to FOIA request); Martins Declaration, ECF No. 18

¶ 30, Exhs. B, C.  Beginning in or around March 2012, Mr. Martins stopped receiving the Asylum

Officer notes of his clients' asylum interviews on a consistent basis despite his having requested

them (as he had previously) through a FOIA request for the A-File.  Complaint, ECF No. 1 ¶ 41;

Martins Declaration, ECF No. 18 ¶ 31.  Over the past several months, none of Mr. Martins's

requests under FOIA for his clients' A-Files has led to production of the notes taken during his

UNITED STATES DISTRICT COURT
For the Northern District of California

1    clients' asylum interviews though he has repeatedly appealed to the agency and specifically

2    challenged the withholding of asylum interview notes.  Complaint, ECF No. 41; Martins

3    Declaration, ECF No. 18 ¶ 31.  While USCIS has been withholding Asylum Officer notes when

4    requested under FOIA, DHS continues to make the notes available to ICE Trial Attorneys and

5    allows them to use them against affirmative asylum applicants who are referred for removal

6    proceedings before the Immigration Court.[4]  Complaint, ECF No. 1 ¶ 43; Martins Declaration, ECF

7    No. 18 ¶ 32.  Even when the Asylum Officer interview notes are not used against a client in removal

8    proceedings, an attorney representing an affirmative asylum applicant in subsequent proceedings is

9    impeded in his or her ability to provide the highest level of quality representation when it is not

10   possible for the notes to be secured under FOIA or by other means.  Complaint, ECF No. 1 ¶ 45.

11   **II.  MR. MARTINS'S FOIA REQUESTS FOR HIS CLIENTS' A-FILES**

12        Mr. Martins is an immigration attorney who represents persons seeking asylum in the United

13   States.  Complaint, ECF No. 1 ¶ 1; Martins Declaration, ECF No. 18 ¶ 1, 4.  He regularly represents

14   asylum seekers and other immigrants before the Asylum Office, District Immigration Office,

15   Immigration Court, Board of Immigration Appeals, and U.S. Court of Appeals.  Complaint, ECF No.

16   1 ¶ 11; Martins Declaration, ECF No. 18 ¶ 4.  When representing clients before the Immigration

17   Court and in other matters, Mr. Martins routinely submits FOIA requests to DHS (formerly the U.S.

18   Immigration and Naturalization Service ("INS")) and one or more of its constituent agencies,

19

20

21   _____

22        [4] In circumstances in which notes from an individual's asylum interview are introduced
     as evidence by an ICE Trial Attorney, the respondent then receives a copy of the interview notes
23   that neither the individual nor his legal representative currently can secure under FOIA.  Complaint,
     ECF No. 1 ¶ 44.  If the respondent is represented, his or her counsel will receive a copy of the notes.
24   *Id.*  By then, the legal representative's ability to address the notes and adequately prepare the client
     and the case has been seriously hampered.  *Id.*  Even where it may be possible to secure a
25   continuation of proceedings, there are negative consequences.  *Id.*  Due to the immense load of cases
     handled by the Immigration Courts and the effects of the backlog, a continuance can result in
26   postponement of the proceedings for lengthy periods of time.  *Id.*  This delay, in turn, can negatively
     affect witnesses' memories and availability, increase the stress level for the asylum seeker, and
27   prolong the time when the applicant is separated from a spouse or children he or she had to leave
     behind when fleeing the home country.  *Id.*
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

including USCIS[5], for a given client's complete A-File, which contains all DHS- and former INS-generated records and documents pertaining to the client's immigration status and history. Complaint, ECF No. 1 ¶ 11; Martins Declaration, ECF No. 18 ¶¶ 5-8.  Mr. Martins makes these FOIA requests with his clients' consent and on their behalf.  Complaint, ECF No. 1 ¶ 11; Martins Declaration, ECF No. 18 ¶ 5.

Mr. Martins made the following FOIA requests, which are at issue in this action:

• On or about March 26, 2012, Mr. Martins submitted a FOIA request for the A-File of his client, N.S.  This request is identified as NRC2012026531.  In its response, USCIS indicated that it had identified 190 pages as responsive to the request.  On or about April 12, 2012, USCIS indicated it was releasing 58 pages in full and 57 pages in part to Mr. Martins, while withholding 54 pages in full.  USCIS further indicated that it was referring an additional 21 pages to another agency for it to respond directly to Mr. Martins.  On or about May 29, 2012, Mr. Martins appealed the determination to withhold material covered by the request, specifically challenging the withholding of the notes taken by the Asylum Officer at N.S.'s asylum interview.  On or about June 10, 2012, after receiving Mr. Martins's appeal, USCIS indicated it was releasing an additional 52 pages, 15 in full and 37 in part, to him.  With the exception of one page, which laid out questions and answers pertaining to the mandatory bars to asylum, the Asylum Officer's notes of N.S.'s interview were not among the pages released.  Defendants continue to withhold the Asylum Officer notes of N.S.'s interview.  The merits hearing for N.S. is set for July 12, 2013.  Complaint, ECF No. 1 ¶ 52; Martins Declaration, ECF No. 18 ¶ 37, Exh. F.

• On or about April 12, 2012, Mr. Martins submitted a FOIA request for the A-File of his

---

[5] USCIS is the federal agency that oversees lawful immigration to the United States. Complaint, ECF No. 1 ¶ 12.  It is a component of DHS and is responsible for certain immigration-related adjudications and benefits programs.  Id.  Among the programs that it administers are those that are "humanitarian" in nature, providing protection to individuals inside and outside the United States who are displaced by war, famine, and civil and political unrest, and those who are forced to flee their countries to escape the risk of death and torture at the hands of persecutors.  Id.  This includes administration of the Asylum Program.  Id.  Also part of USCIS is the National Records Center ("NRC").  Id.  In addition to fulfilling an internal record-keeping role for the agency, NRC is the main office for the processing of FOIA requests directed to users.  Id.

1    client, A.A.G.  This request is identified as NRC2012033089.  In its response, USCIS indicated

2    that it had identified 488 pages as responsive to the request.  On or about May 29, 2012, USCIS

3    indicated that it was releasing 242 pages in full and 17 pages in part to Mr. Martins.  The

4    agency's response indicated that 88 pages were withheld in their entirety and an additional 6

5    pages were referred to other agencies for those entities to respond directly to Mr. Martins.  On or

6    about June 19, 2012, Mr. Martins appealed the determination to withhold information covered by

7    the initial FOIA request and specifically challenged the withholding of the notes that the Asylum

8    Officer took during A.A.G.'s asylum interview.  On or about July 23, 2012, after receiving the

9    appeal, USCIS indicated it was releasing an additional 20 pages in part to Mr. Martins.

10   Defendants continue to withhold the Asylum Officer's notes of A.A.G.'s interview.  The merits

11   hearing for A.A.G. is currently set for September 27, 2013.  Complaint, ECF No. 1 ¶ 53; Martins

12   Declaration, ECF No. 18 ¶ 38, Exh. G.

13   •      On or about May 23, 2012, Mr. Martins submitted a FOIA request for the A-File of his

14   client, C.S.  This request is identified as NRC2012046553.  On or about June 5, 2012, USCIS

15   responded, indicating that it had identified 1,413 pages as responsive to Mr. Martins's request.

16   USCIS indicated that it was releasing 1,258 pages in full and 16 pages in part and withholding

17   99 pages in full.  USCIS further indicated that it was referring an additional 21 pages to another

18   agency for it to respond directly to Mr. Martins.  On or about June 5, 2012, Mr. Martins appealed

19   the determination to withhold responsive material, specifically challenging the withholding of

20   the notes documenting the two Asylum Office interviews of C.S.  On or about July 19, 2012,

21   after receiving Mr. Martins's appeal, USCIS indicated it was releasing an additional 11 pages in

22   part to him.   Defendants continue to withhold the Asylum Officer notes of C.S.'s interviews.

23   The merits hearing for C.S. took place on June 21, 2013, and asylum was denied.  Complaint,

24   ECF No. 1 ¶ 54; Martins Declaration, ECF No. 18 ¶ 39, Exh. H; Hughes Declaration, ECF No.

25   26 at 2.

26   •      On or about May 1, 2012, Mr. Martins submitted a FOIA request for the A-File of his client,

27   T.L.  This request is identified as NRC2012038580. On or about May 22, 2012, USCIS informed

28   Mr. Martins of the agency's determination to withhold 10 pages in part and 63 in full.  On or

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

about June 5, 2012, Mr. Martins appealed the determination to withhold responsive material and included a specific challenge to the withholding of the notes documenting T.L.'s interview at the Asylum Office.  On or about July 16, 2012, USCIS indicated it was releasing an additional 38 pages to Mr. Martins.  Defendants continue to withhold the Asylum Officer notes of T.L.'s interview.  The merits hearing for T.L. is currently set for November 19, 2014.  Complaint, ECF No. 1 ¶ 55; Martins Declaration, ECF No. 18 ¶ 40, Exh. I.

•      On or about June 1, 2012, Mr. Martins submitted a request under FOIA for the A-File of his client, K.L.  This request is identified as NRC2012049919.  On or about June 12, 2012, USCIS responded, stating that it had identified 171 responsive pages.  USCIS indicated that it was releasing 108 pages in full and 14 in part to Mr. Martins.  On or about June 19, 2012, Mr. Martins appealed the determination to withhold responsive material and included a specific challenge to the withholding of the notes of his client's asylum interview.  In response to Mr. Martins's administrative appeal, on or about July 19, 2012, USCIS indicated that it was releasing an additional 14 pages in part and 4 in full to him.  Defendants continue to withhold the notes of K.L.'s asylum interview.  The merits hearing for K.L. was set for July 1, 2013 but was moved to August 19, 2013 (according to counsel at the hearing).  Complaint, ECF No. 1 ¶ 56; Martins Declaration, ECF No. 18 ¶ 41, Exh. J;

•      On or about June 15, 2012, Mr. Martins submitted a FOIA request for the A-File of his client, E.E.  This request is identified as NRC2012055907.  On or about July 3, 2012, USCIS indicated that it had identified 200 responsive pages and was releasing 169 pages in full and 9 pages in part to Mr. Martins, while withholding 15 pages in full.  USCIS also informed Mr. Martins that it was referring an additional 7 pages to other agencies for those entities to respond directly to Mr. Martins.  On or about July 12, 2012, Mr. Martins appealed the determination to withhold responsive material and specifically challenged the withholding of the notes documenting the Asylum Office interview of E.E.  On or about August 3, 2012, USCIS responded to Mr. Martins's administrative appeal and indicated that it would release an additional 2 pages in part.  Defendants continue to withhold the Asylum Officer notes of E.E.'s interview.  The merits hearing for E.E is currently set for March 2, 2015.  Complaint, ECF No. 1

1    ¶ 57; Martins Declaration, ECF No. 18 ¶ 42, Exh. K.

2    •       On or about June 15, 2012, Mr. Martins submitted a request under FOIA for the A-File of his

3    client, S.S.  This request is identified as NRC2012055854.  On or about July 19, 2012, USCIS

4    indicated that it had identified 177 responsive pages and was releasing 120 pages in full and 10

5    pages in part to Mr. Martins, while withholding 43 pages in full.  USCIS also informed Mr.

6    Martins that it was referring an additional 3 pages to another agency for it to respond directly to

7    Mr. Martins.  On or about August 24, 2012, Mr. Martins appealed the determination to withhold

8    responsive material.  In particular, Mr. Martins challenged the withholding of the notes

9    documenting the Asylum Office interview of S.S.  On or about October 1, 2012, USCIS

10   responded to Martins's administrative appeal and indicated that it would release an additional 33

11   pages in part and one in full.  Defendants continue to withhold the Asylum Officer notes of

12   S.S.'s interview.  The merits hearing for S.S. is currently set for September 30, 2013.

13   Complaint, ECF No. 1 ¶ 58; Martins Declaration, ECF No. 18 ¶ 43, Exh. L.

14   •       On or about January 19, 2012, Mr. Martins submitted a FOIA request for the A-File of his

15   client, Y.L.  This request is identified as NRC2012003177.  On or about July 3, 2012, USCIS

16   indicated it had identified 231 responsive pages and was releasing 123 pages in full and 9 pages

17   in part to Mr. Martins, while withholding 80 pages in full.  USCIS indicated that it was referring

18   an additional 14 pages to other agencies for their direct response to Mr. Martins.  On or about

19   July 16, 2012, Mr. Martins appealed the determination to withhold responsive material and

20   included a specific challenge to the withholding of the notes of Y.L.'s asylum interview.  In

21   response to Mr. Martins's administrative appeal, on or about August 7, 2012, USCIS released an

22   additional 40 pages in part and one in full.  Defendants continue to withhold the notes of Y.L.'s

23   interview. The merits hearing for Y.L. is currently set for July 17, 2014.  Complaint, ECF No. 1

24   ¶ 59; Martins Declaration, ECF No. 18 ¶ 44, Exh. M.

25   •       On or about July 27, 2012, Mr. Martins submitted a FOIA request for the A-File of his client,

26   I.A.  This request is identified as NRC2012069832.  On or about August 15, 2012, USCIS

27   responded and indicated it would withhold 27 responsive pages in full and 9 such pages in part.

28   On or about August 21, 2012, Mr. Martins appealed the determination to withhold responsive

material and included a specific challenge to the withholding of the notes of I.A.'s asylum interview.  In response to Mr. Martins' administrative appeal, on or about September 27, 2012, USCIS indicated it was releasing an additional 2 pages in part.  Defendants continue to withhold the notes of I.A.'s interview.  The merits hearing for I.A. was held on March 27, 2013. Asylum was granted, but Mr. Martins nonetheless contends that he continues to have a need for the notes from his interview, as they may bear on future representation that he may provide.  Complaint, ECF No. 1 ¶ 60; Martins Declaration, ECF No. 18 ¶ 45, Exh. N.

•     On or about November 1, 2012, Mr. Martins submitted a FOIA request for the A-file of his client, M.A.  This request is identified as NRC2012099752.  USCIS's response indicated that it had identified 195 pages as responsive to the request.  USCIS agreed to release 152 pages in full and 9 pages in part to Mr. Martins, while indicating it was withholding 24 pages in full.  On or about December 17, 2012, Mr. Martins appealed the determination to withhold responsive material and included a specific challenge to the withholding of the notes of M.A.'s interview at the Asylum Office.  On or about December 26, 2012, USCIS acknowledged receipt of the administrative appeal and assigned control number APP2012001489 to the appeal.  To date, Mr. Martins has not received any further response to the administrative appeal, and Defendants continue to withhold the Asylum Officer notes of M.A.'s asylum interview.  The merits hearing for M.A. is currently set for November 16, 2013.  Complaint, ECF No. 1 ¶ 61; Martins Declaration, ECF No. 18 ¶ 46, Exh. O.

As described above, Mr. Martins submitted FOIA requests for 10 of his clients' A-Files, and he has not received the interview notes from any of them.  He alleges that Defendants have refused to produce the interview notes on the ground that they are protected by the deliberative process privilege and therefore are exempt from FOIA under Exemption 5.  Complaint, ECF No. 1 ¶ 5; *see* Opposition, ECF No. 20 at 13 (acknowledging that the notes are being withheld on this ground).

## ANALYSIS

## I.  LEGAL STANDARD

For a court to issue a preliminary injunction, a plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not

1   issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public

2   interest.  *See Winter v. Natural. Res. Def. Council*, 555 U.S. 7, 20 (2008).  The irreparable injury

3   must be both likely and immediate.  *See Carribean Marine Services Co., Inc. v. Baldrige*, 844 F.2d

4   668, 674 (9th Cir. 1988) ("a plaintiff must demonstrate immediate threatened injury as a prerequisite

5   to preliminary injunctive relief").

6         Prior to *Winter*, the Ninth Circuit employed a "sliding scale" test that allowed a plaintiff to prove

7   either "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) [ ]

8   serious questions going to the merits were raised and the balance of hardships tips sharply in its

9   favor."  *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (citation omitted).  In

10  this continuum, "the greater the relative hardship to [a plaintiff], the less probability of success must

11  be shown."  *Id.*  Following *Winter*, the Ninth Circuit held that although the Supreme Court

12  invalidated the sliding scale approach, the "serious questions" prong of the sliding scale survived so

13  long as the plaintiff satisfied the other elements for preliminary relief.  *Alliance for Wild Rockies v.

14  Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).  Thus, a preliminary injunction may be appropriate

15  when a plaintiff raises "serious questions going to the merits" of the case and the "balance of

16  hardships tips sharply in the plaintiff's favor," provided that the other elements for relief are also

17  satisfied.  *Id.* at 1132.

18  **II.  APPLICATION**

19      **A.  Whether Mr. Martins Has Shown a Likelihood of Success on the Merits**

20         As described above, Mr. Martins submitted FOIA requests for the A-Files for 10 clients.

21  Defendants produced most of the documents contained within the A-Files but withheld the Asylum

22  Officers' notes from his clients' interviews with those Asylum Officers on the ground that the

23  interview notes are exempted from disclosure under Exemption 5 of FOIA.  *See* Complaint, ECF

24  No. 1 ¶ 5; Opposition, ECF No. 20 at 13.  Specifically, Defendants contend that the interview notes

25  are protected from disclosure by the "deliberative process" privilege.  *See* Complaint, ECF No. 1 ¶

26  5; Opposition, ECF No. 20 at 13.  After exhausting his administrative remedies[6], Mr. Martins filed

27

28         [6] Under Rule 12(b)(1), Mr. Martins bears the burden of establishing subject matter
jurisdiction.  *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221,

1    suit alleging that Defendants are improperly withholding the interview notes in violation of FOIA.[7]

2    Complaint, ECF No. 1; *see Nat. Resources Defense Council v. United States Dep't of Defense*, 388

3    F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) ("Where a citizen has made a request for information under

4    FOIA, and the agency has refused in whole or in part to produce responsive materials, the act

5    authorizes the citizen to bring suit in federal court challenging the agency's refusal to disclose

6    documents to the requester.") (citing 5 U.S.C. § 552(a)(4)(B)).  For the reasons explained below, the

7    court believes that Mr. Martins has shown a high likelihood of success on the merits of his FOIA

8    claim.

9        FOIA, which Congress enacted to overhaul the public-disclosure section of the Administrative

10   Procedures Act, allows private citizens to access government records.  *See Milner v. Dep't of Navy*,

11   131 S.Ct. 1259, 1262 (2011); *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996); *see also Dep't of Air

12   Force v. Rose*, 425 U.S. 352, 361 (1976) (discussing Congress's creation of FOIA).  It "mandates a

13   policy of broad disclosure of government documents." *Church of Scientology v. Dep't of the Army*,

14   611 F.2d 738, 741 (9th Cir. 1979).  Underlying this policy is the principal that open government

15   allows "an informed citizenry to hold the governors accountable to the governed." *Grand Central

16   Partnership, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (internal citations and quotations

17   omitted).  Accordingly, every federal agency is required under the Act to make its records "promptly

18   available to any person" upon receipt of a reasonably articulated request.  5 U.S.C. § 552(a)(3).

19       The "policy of broad disclosure" is not without limitation.  *See Phillips v. Immigration and

20   Customs Enforcement*, 385 F. Supp. 2d 296, 301 (S.D.N.Y. Feb. 14, 2005).  An agency may

21

22   1225 (9th Cir. 1989).  A plaintiff must exhaust his or her administrative remedies before filing a
     FOIA action. 5 U.S.C. § 552(a)(6)(A); *In re Steele*, 799 F.2d 461, 465 (9th Cir. 1986).  Where a

23   plaintiff has failed to exhaust within the administrative system, the district court will dismiss the

24   case for lack of jurisdiction. *Id.* at 465-66.  To satisfy this exhaustion requirement, plaintiffs "must
     request specific information in accordance with published administrative procedures, *see* 5 U.S.C. §

25   552(a)(1), (2) & (3), and have the request improperly refused . . . ." *Id.* at 466.  Mr. Martins alleges
     that he has done so, Complaint, ECF No. 1 ¶¶ 62-65, and Defendants do not challenge Mr. Martins's

26   action on this ground.

27       [7] In his motion, Mr. Martins addresses only the likelihood that he will succeed on his FOIA

28   claim; he does not address his APA claim.  *See* Motion, ECF No. 17 at 8 n.1.  For this reason, the
     court also addresses only the likelihood that Mr. Martins will succeed on his FOIA claim.

1   withhold a requested document "if the material at issue falls within one of the nine statutory

2   exemptions found in [5 U.S.C.] § 552(b)."  *Maricopa Audubon Soc'y v. United States Forest Serv.*,

3   108 F.3d 1082, 1085 (9th Cir. 1997); *see Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072,

4   1079 (9th Cir. 2004) (noting the Supreme Court's broad interpretation of FOIA requires full agency

5   disclosure except where specifically exempted).  These exemptions are "explicitly exclusive, and

6   must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy."

7   *Maricopa*, 108 F.3d at 1085 (internal citations and quotation marks omitted) (emphasis added); *see*

8   *Milner*, 131 S.Ct. at 1265–66 (emphasizing that FOIA strongly favors openness and "broad

9   disclosure" with narrowly construed exceptions).  The burden is on the agency to show that withheld

10  materials are exempt from disclosure.  5 U.S.C. § 552(a)(4)(B); *see Minier*, 88 F.3d at 800.

11      Here, Defendants rely on Exemption 5 of FOIA to support withholding of the interview notes.

12  Exemption 5 "makes FOIA inapplicable to 'inter-agency or intra-agency memorandums or letters

13  which would not be available by law to a party other than an agency in litigation with the agency.'"

14  *United States Dep't of Justice v. Julian*, 486 U.S. 1, 11 (1988) (quoting 5 U.S.C. § 552(b)(5)).  The

15  Supreme Court has interpreted this provision as "incorporat[ing] the privileges which the

16  Government enjoys under the relevant statutory and case law in the pretrial discovery context."

17  *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975); *see also*

18  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (Exemption 5 "exempt[s] those

19  documents, and only those documents, normally privileged in the civil discovery context."); H.R.

20  Rep. No. 1497, 89th Cong., 2d Sess., 10 (1966), U.S. Code Cong. & Admin. News 1966, p. 2418

21  (the purpose of Exemption 5 is to ensure that "any internal memorandums which would routinely be

22  disclosed to a private party through the discovery process in litigation with the agency would be

23  available to the general public").  Accordingly, "[t]he test under Exemption 5 is whether the

24  documents would be 'routinely' or 'normally' disclosed upon a showing of relevance."  *FTC v.*

25  *Grolier Inc.*, 462 U.S. 19, 26 (1983).

26      Defendants assert that the interview notes would not normally be disclosed because they are

27

28

1    protected by the so-called "deliberative process" privilege that exists under federal common law.[8]

2    Under the privilege, a government can withhold documents or prevent testimony that "reflect[s]

3    advisory opinions, recommendations and deliberations comprising part of a process by which

4    government decisions and policies are formulated." *FTC v. Warner Commn's*, 742 F.2d 1156, 1161

5    (9th Cir. 1984).  The primary purpose of the privilege is to "prevent injury to the quality of agency

6    decisions" where "'frank discussion of legal or policy matters' in writing might be inhibited if the

7    discussion were made public." *Sears*, 421 U.S. at 150 (quoting S. Rep. No. 813, p. 9).  Its other

8    purposes include to "protect against premature disclosure of proposed policies before they have been

9    finalized or adopted; and to protect against confusing the issues and misleading the public by

10   dissemination of documents suggesting reasons and rationales for a course of action which were not

11   in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Dep't of Energy*,

12   617 F.2d 854, 866 (D.C. Cir. 1980) (citing *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772-774

13   (D.C. Cir. 1978)).

14        There are two requirements to establish the applicability of the privilege.  *See North Pacifica,*

15   *LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 (N.D. Cal. 2003).  First, the document or

16   testimony "must be predecisional—i.e., it must have been generated before the adoption of [a]

17   policy or decision." *FTC v. Warner Commc'ns*, 742 F.2d 1156, 1161 (9th Cir. 1984); *see also Sears*,

18   421 U.S. at 152 (noting that "communications made after the decision and designed to explain it" are

19   not privileged).  Second, the document or testimony "must be deliberative in nature, containing

20   opinions, recommendations, or advice about . . . policies [or decisions]." *FTC*, 742 F.2d at 1161.

21   As one court has put it, "the central question is not whether the information at issue bears a causal

22   connection to a final determination, but is rather whether the requested information independently

23   'reflects' the deliberative process itself." *McGrady v. Mabus*, 635 F. Supp. 2d 6, 18 (D.D.C. 2009)

24   (citing *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 569 F.3d 434, 444 (D.C. Cir. 2009) ("Only

25   those portions of a predecisional document that reflect the give and take of the deliberative process

26

27   _____

28        [8] "In federal question cases, federal privilege law applies." *N.L.R.B. v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1009 (9th Cir.1996) (citing Fed. R. Evid. 501); *see also North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120 (N.D. Cal. 2003).

1   may be withheld.") (internal citations omitted)).  For this reason, "[p]urely factual material that does

2   not reflect deliberative processes is not protected"; nonetheless, factual material that "is so

3   interwoven with the deliberative material that it is not severable" is protected.  *Id.*  Indeed, one court

4   has cautioned that, while [f]actual material generally is not considered deliberative, . . . the

5   fact/opinion distinction should not be applied mechanically.  Rather, the relevant inquiry is whether

6   'revealing the information exposes the deliberative process.'"  *Sanchez v. Johnson*, No. C-00-1593

7   CW (JCS), 2001 WL 1870308, at *5 (N.D. Cal. Nov. 19, 2001) (quoting *Assembly of the State of*

8   *California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)).  "The court

9   must, however, take into account the deliberative process as a whole, and whether the disclosure of

10   even factual material would reveal a decisionmaker's mental process."  *Hajro v. U.S. Citizenship*

11   *and Immigration Servs.*, 832 F. Supp. 2d 1095, 1112 (N.D. Cal. 2011) (citing *Cal. Native Plant*

12   *Soc'y v. United States Environmental Protection Agency*, 251 F.R.D. 408, 413 (N.D. Cal. 2008); *see*

13   *also Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118-19 (9th Cir. 1988).

14       "Even if established, the privilege can be overcome because it is a qualified privilege; that is, '[a]

15   litigant may obtain deliberative materials [or information] if his or her need for the materials [or

16   information] and the need for accurate fact-finding override the government's interest in

17   non-disclosure."  *North Pacifica*, 274 F. Supp. 2d at 1122 (quoting *FTC*, 742 F.2d at 1161).

> In deciding whether the qualified deliberative process privilege should be overcome,
> a court may consider the following factors: (1) the relevance of the evidence; (2) the
> availability of other evidence, (3) the government's role in the litigation, and (4) the
> extent to which disclosure would hinder frank and independent discussion regarding
> contemplated policies and decisions. *See id.*  Other factors that a court may consider
> include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact
> finding, (6) the seriousness of the litigation and the issues involved, (7) the presence
> of issues concerning alleged governmental misconduct, and (8) the federal interest in
> the enforcement of federal law.

23   *Id.* (citing *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989).

24       A review of Defendants' opposition reveals that they have not at this point met their burden to

25   show that the deliberative process protects the interview notes from disclosure (regardless of

26   whether the interview notes are only those sought by Mr. Martins or any interview notes generally).

27   *See* Opposition, ECF No. 13-15.  Indeed, Defendants refer to the deliberative process privilege only

28   once  (when they state in a conclusory way that they will continue to rely on it) and, aside from a

1    citation in a footnote to a single judicial opinion[9] – make no attempt to argue for its application.  *See*

2    *id.*

3           Instead, Defendants argue only that Mr. Martins's proposed relief – the speedy release of the

4    interview notes – is premature because Defendants have yet to submit a *Vaughn* index that identifies

5    the documents withheld, the FOIA Exemptions relied on, and a detailed explanation about why the

6    documents fall within the claimed Exemptions.  *See Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C.

7    Cir. 1973); *see King v. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (describing the

8    content of a *Vaughn* index).  This argument does not support a finding that Mr. Martins's FOIA

9

10          [9] Without elaboration, Defendants cite to *Phillips v. Immigration and Customs Enforcement*,
385 F. Supp. 2d 296 (S.D.N.Y. 2005), apparently in support of their argument that the deliberative

11   process privilege applies to the interview notes Mr. Martins requests.  Opposition, ECF No. 20 at 13
n.2.  In *Phillips*, the plaintiff sought "selective portions of government records relating to the

12   immigration status of two former military officials of El Salvador, General Jose Guillermo Garcia,
El Salvador's Minister of Defense from 1979 to 1983, and General Carlos Eugenio Vides-Casanova,

13   Director-General of El Salvador's National Guard during the same period."  *Id.* at 299.  Included in
this request were the "handwritten notes of an interview of Garcia by an INS official following his

14   request for asylum [], as well as a brief summary of the interview and an initial assessment of
Garcia's request []."  *Id.* at 302.  The defendant withheld these documents pursuant to the

15   deliberative process privilege.  *Id.*  The court concluded that the deliberative process privilege
applied to the handwritten interview notes (i.e., they were both pre-decisional and deliberative) and

16   that, although the notes arguably were "largely factual," the factual information was not severable
from its deliberative context because the notes were not "a verbatim transcript" and instead

17   "appear[ed] to reflect a selective recording of information particularly pertinent to Garcia's request
for asylum."  *Id.* at 303.

18

19          Anticipating Defendants' citation to this opinion, Mr. Martins contends in his motion that
*Phillips* is distinguishable "for a number of reasons, including that the documents at issue there were

20   of a different nature than the notes [Mr. Martin] seeks."  Motion, ECF No. 17 at 15 n.3.  Although
the court will not attempt to guess what Mr. Martins means by this statement, it does note that other,

21   similarly non-binding authority has come out the other way with respect to the applicability of the
deliberative process privilege to "factual" portions of interview notes (even ones that do not purport

22   to be "verbatim transcripts").  *See Kubik v. United States Fed. Bureau of Prisons*, No. 10-6078-TC,
2011 WL 2619538, at *7 (D. Or. July 1, 2011).  Also, this case involves asylum seekers' access to

23   their own interviews, which implicates different issues – as with an inmate's access to his own
presentence report – than a third party's access to information (including, in *Phillips*, access to the

24   asylum officer's notes of interviews of two former military leaders in El Salvador).  In any event,
given that the deliberative process privilege is qualified and depends on factors that include the

25   relevance of the evidence, *see FTC*, 742 F.2d at 1161, the court's expedited *Vaughn* index remedy
addresses any concerns.

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    claim is unlikely to succeed.  "The purpose of the index is to 'afford the FOIA requester a

2    meaningful opportunity to contest, and the district court an adequate foundation to review, the

3    soundness of the withholding.'"  *Weiner v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (quoting *King*,

4    830 F.2d at 218).  "The index thus functions to restore the adversary process to some extent, and to

5    permit more effective judicial review of the agency's decision."  *Id.* at 977-78.  The lack of a

6    *Vaughn* index, then, does not bear upon the merits of a plaintiff's FOIA claim (i.e., whether an

7    agency properly may withhold a particular document); rather, the lack of one bears upon the

8    plaintiff's ability to contest, and the court's ability to decide, the appropriateness of the withholding.

9         Conversely, the court believes that Mr. Martins has shown – to the extent he can without actually

10   seeing the documents or having a *Vaughn* index – that he is likely to succeed on the merits of his

11   FOIA claim.  Although the interview notes clearly are predecisional (because the interview takes

12   place and the interview notes are taken before a determination is made whether to grant an

13   interviewee asylum), Mr. Martins has put forth a credible argument, supported by authority, that the

14   notes are not deliberative because they most likely are near-verbatim transcripts of the interview and

15   most likely contain only factual material and do not contain the Asylum Officers' subjective

16   opinions or Defendants' deliberative process about whether to grant asylum to the interviewee.  The

17   court uses the phrase "most likely" because, without a *Vaughn* index or an *in camera* review, the

18   court cannot describe the interview notes with certainty.

19        To fill in this data gap, Mr. Martins has submitted evidence – which Defendants did not contest –

20   showing that Asylum Officers are trained to take notes that are clear, accurate, detailed, and

21   objective and that do not include the Officers' subjective opinions, suppositions, or personal

22   inferences.  *See* Complaint ¶ 24, Exh. A at 3, 5-7, 10; Burke Declaration, ECF No. 19, Exh. B at 3,

23   5-7, 10.  Mr. Martins also submitted interview notes that he has received in response to past FOIA

24   requests and that appear largely to be near-verbatim[10] transcripts of the interviews (or, in any case,

25   they contain factual answers to questions and do not contain any subjective opinions, suppositions,

26

27   _____

28        [10] To be fair, the court notes that the interview notes Mr. Martins submitted state that the they
     are not a verbatim transcript of the interview.  *See* Complaint, ECF No. 1 ¶ 40, Exh. B; Martins
     Declaration, ECF No. 18 ¶ 30, Exh. B, C.

or personal inferences).  *See* Complaint, ECF No. 1 ¶ 40, Exh. B; Martins Declaration, ECF No. 18 ¶ 30, Exh. B, C.  When pressed at the hearing about whether it conceded that the examples in the record were factual and not subject to the deliberative process exemption, the government did not concede the point but did not provide any basis at the hearing or in its opposition to allow the court to conclude – given the transcript-like notes and the training to take only objective notes that are like a transcript – that the deliberative process exemption applies.

In addition, Mr. Martins cites persuasive authority – also unchallenged by Defendants – holding that factual information, such as summaries of interviews and records containing personnel data and summaries of individuals' performance evaluations, does not fall under the deliberative process privilege when it is merely used during the deliberative process and does not reflect the deliberative process itself.  *See Kubik v. United States Fed. Bureau of Prisons*, No. 10-6078-TC, 2011 WL 2619538, at *7 (D. Or. July 1, 2011) (finding that a United States Bureau of Prisons Board of Inquiry committee's summary of staff members' recollections and responses to a prison riot "is merely a summary of facts, to which the [deliberative process] privilege does not apply" and concluding that the summary must be produced pursuant to the plaintiff's FOIA request; distinguished between the interview summary (which did not reflect the deliberative process) and the committee's assessment of staff and inmate atmosphere at the prison and the committee's finding and recommendations regarding corrective actions (which did reflect that process)); *McGrady v. Mabus*, 635 F. Supp. 2d 6, 17-19 (D.D.C. 2009) (finding that United States Navy "Master Brief Sheets," which contain personnel data and summaries of individuals' performance evaluations and which the Selection Board uses to determine which Navy officers should be promoted, are not deliberative in nature

because, while they are "used as a tool in the decision-making process, and serve as an important factor in the final promotion decision, . . . [t]hey reveal only the data used during the process, not the substance of the deliberations") (citing *Public Citizen*, 569 F.3d at 444 ("[A]gencies must disclose those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the government's deliberations.")) (internal citations and quotation marks

UNITED STATES DISTRICT COURT
For the Northern District of California

1    omitted)).[11]

2         In light of the evidence and authority that Mr. Martins puts forth and Defendants' failure to

3    challenge it or make any argument to support a contrary conclusion, the court finds that Mr. Martins

4    has shown a likelihood that he will succeed on the merits of his FOIA claim.

5    **B.  Whether Mr. Martins Has Shown a Likelihood of Irreparable Injury**

6         As he must, Mr. Martins also argues that he will suffer irreparable injury if the court does not

7    issue a preliminary injunction requiring production of the requested interview notes.  Motion, ECF

8    No. 17 at 18-20.  He argues that this is clear by looking to both Ninth Circuit precedent and the

9    practical realities of the removal process.

10        First, Mr. Martins argues that a Ninth Circuit opinion, *Dent v. Holder*, 627 F.3d 365 (9th Cir.

11   2010), requires Defendants to produce the entirety of his clients' A-Files, lest Defendants deprive

12   his clients of their Fifth Amendment Due Process rights.  Motion, ECF No. 18.  In *Dent*, DHS

13   initiated removal proceedings against the plaintiff on the ground that he was not an American citizen

14   or national, and had been convicted of an aggravated felony.  *Id.* at 368.  He had lived in the United

15   States since 1981, but according to the government, he was a citizen of Honduras and had been a

16   lawful permanent resident of the United States rather than a citizen.  *Id.*  The plaintiff defended

17   against his removal by arguing that he had been adopted by an American citizen when he was a

18   child, and was an American citizen himself.  *Id.*  It turned out that his childhood naturalization

19   applications, which corroborated his claim of citizenship, were contained in his A-File.  *Id.* at 370.

20   Even though the government had the plaintiff's A-File, he was not given these documents, and the

21   Immigration Judge and Board of Immigration Appeals were not made aware of them in the removal

22   proceedings.  *Id.*  The Immigration Judge found the plaintiff removable, and the Board of

23   Immigration Appeals affirmed the decision.  *Id.*

24        On appeal, the Ninth Circuit determined that the plaintiff had been denied an opportunity to fully

25   and fairly litigate his removal.  *Id.* at 374.  First, it explained that "[a]n alien has a Fifth Amendment

26

27        [11] Even if the interview notes do not fully constitute factual information such that the
     deliberative process privilege may apply, given the evidence submitted by Mr. Martins, the court
28   also believes there is a good chance that the privilege could be overcome under the factors described
     above.  *See North Pacifica*, 274 F. Supp. 2d at 1122.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Due Process right to a full and fair hearing in a deportation proceeding." *Id.* at 373 (citing

2   *Burgos-Abril v. I.N.S.*, 58 F.3d 475, 476 (9th Cir. 1995) (citation omitted).  Then, it noted that

3   Congress provided that, to meet his or her burden of proof in a removal proceeding, an alien "shall

4   have access" to his or her entry document "and any other records and documents, not considered by

5   the Attorney General to confidential, pertaining to the alien's admission or presence in the United

6   States." *Id.* at 374 (citing 8 U.S.C. § 1229a(c)(2)(B)).  "This mandatory access law," the Ninth

7   Circuit concluded, "entitled [the plaintiff] to his A-file." *Id.*

8       Mr. Martins contends that he will suffer irreparable injury because *Dent* stands for the

9   proposition that Defendants must disclose certain documents within his clients' A-Files such as the

10   interview notes.  Motion, ECF No. 17 at 18.  He argues that *Dent* recognized that the deprivation of

11   A-File materials raises constitutional due process concerns," and then points out that, "in the Ninth

12   Circuit, '[i]t is well established that the deprivation of constitutional rights unquestionably

13   constitutes irreparable injury.'" *Id.* (quoting *Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th

14   Cir. 2012)).  Defendants contest this reading of *Dent* and argue that *Dent*'s holding does not extend

15   to the situation Mr. Martins is in.  Opposition, ECF No. 20 at 17.  His situation is that he made 10

16   FOIA requests and that, while most of his clients' A-Files were produced, their interview notes were

17   not because Defendants believe them to be protected by the deliberative process privilege.  Indeed,

18   *Dent* says nothing about any interview notes being critical to an alien's Due Process rights and is

19   silent about whether *any* documents found within an A-File may be withheld on legitimate grounds.

20   Still, the overarching import of the decision is to emphasize the importance of an alien having access

21   to documents in his A-File that will bear upon his or her ability to fully and fairly litigate his or her

22   removal.

23       Second, Mr. Martins points out that the interview notes are important to his ability to fully

24   represent his clients during removal proceedings.  As recounted above, Mr. Martins  provided

25   unchallenged assertions that, with the interview notes, he is able to identify ways that his clients did

26   not communicate effectively the facts relevant to asylum, better prepare clients (including for cross-

27   examination), and identify, investigate, and address perceived inconsistencies, mistakes,

28   misunderstandings, and miscommunications.  *See supra* page 7 & n. 3; Complaint, ECF No. 1 ¶ 36;

1  Martins Declaration, ECF No. 18 ¶¶ 18-24.  He also presented unchallenged assertions that, when he

2  does not have the notes, he typically must spend significant additional time with affected clients in

3  an effort to reconstruct their interviews from memory.  Complaint, ECF No. 1 ¶ 47; Martins

4  Declaration, ECF No. 18 ¶¶ 18-19.  This is an extremely poor substitute for the notes themselves

5  because as time passes, his clients have difficulty remembering the content of their interviews.

6  Complaint, ECF No. 1 ¶ 47; Martins Declaration, ECF No. 18 ¶¶ 18.  Moreover, having to devote

7  the additional time to this subject in meetings with clients has a negative impact on Mr. Martins's

8  law practice.  Complaint, ECF No. 1 ¶ 47; Martins Declaration, ECF No. 18 ¶¶ 5, 8, 19.[12]

9      Third, Mr. Martins notes that some of clients' removal hearings are fast approaching.  For

10  instance, the removal hearings for five clients are in 2013, with one of them on July 12, 2013 (client

11  N.S.).  For another (C.S.), asylum was just denied.  And although three clients have hearings that are

12  not scheduled until 2014 or 2015, Mr. Martins argues convincingly that the interview notes are

13  needed much sooner because his clients' memories and potential evidence fade as time goes by.  He

14  also has identified the importance of the notes to effective representation of his clients.  Complaint,

15  ECF No. 1 ¶ 36; Martins Declaration, ECF No. 18 ¶¶ 18-24.

16      Thus, with *Dent*'s emphasis on the importance of an alien's having access to documents in his A-

17  File that will bear upon his or her ability to fully and fairly litigate his or her removal in mind, and

18  given Mr. Martins' unchallenged assertions regarding the interview notes' importance to his ability

19  to fully represent his clients, the court believes that Mr. Martins has shown, to varying degrees

20  depending on the client, that there is a likelihood of irreparable injury if a preliminary injunction is

21  not issued.

22      **C. Whether the Balance of Equities Tips in Mr. Martins's Favor**

23

24      [12] Defendants argue that Mr. Martins lacks standing to seek a preliminary injunction because

25  it is his clients, and not he, who would suffer injury from not receiving the interview notes.  The
    court disagrees.  *See Hajro v. United States Citizenship and Immigration Servs.*, 832 F. Supp. 2d

26  1095, 1105-06 (N.D. Cal. 2011) (finding that an attorney had standing to challenge a government
    agency's pattern and practice of not responding to FOIA requests because "[t]he delay in FOIA

27  response time prejudices [the attorney's] ability to effectively represent the interests of his client,

28  just as it prejudices the client's ability to access potentially critical information for the immigration
    case") (footnote omitted).

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    The court also looks at the equities involved in this action.  On one hand, Mr. Martins has

2    provided evidence and authority supporting his argument that, without the interview notes, he will

3    not be able to fully and effectively represent his clients in their removal hearings, some of which are

4    fast approaching.  As noted above, the court finds this argument to be compelling.

5    On the other hand, Defendants have, as they put it, "an interest in preventing improper disclosure

6    of documents that are properly protected."  Opposition, ECF No. 20 at 18.  But as the court stated

7    above, with a record that is largely unchallenged by Defendants, the court believes that Mr. Martins

8    is likely to succeed on the merits of his FOIA claim, and the court doubts (again, on this record) that

9    the interview notes in fact are properly protected by the deliberative process privilege.

10   In its filings and at the hearing, Defendants also discuss the burdens of a *Vaughn* index, the

11   unfairness of allowing Mr. Martins to jump ahead of others in line and obtain preferential treatment

12   for the processing of his FOIA request, and the equities about how Mr. Martins waited to ask for

13   information.  *Id.* at 18-19; Hughes Decl., ECF No. 26 at 3-4.  These might be fair arguments in a

14   different context.  *See Fiduccia v. United States Dep't of Justice*, 185 F.3d 1035, 1040-41 (9th Cir.

15   1999).  As the government well knows, the court is mindful of burdens on agencies.  But here, the

16   failure to produce the interview notes is not because Defendants are backed up with FOIA requests

17   that are ahead of Mr. Martins's requests in the queue.  Rather, the interview notes have not been

18   produced because Defendants contended that they did not have to be, full stop.  Indeed, from Mr.

19   Martins's point of view, his requests already have been processed; after all, he received many

20   documents pursuant to his requests.  *See* Reply, ECF No. 23 at 16 n.8.  Also, as to Mr. Martins's

21   alleged delay, the record here shows that Mr. Martin tried to work out the issue with the government

22   in light of the previous disclosure of similar records to him.

23   Accordingly, the court believes that the balance of equities favors Mr. Martins and entry of a

24   preliminary injunction.

25   **D.  Whether an Preliminary Injunction is in the Public Interest**

26   The court finally must determine whether entry of a preliminary injunction is in the public

27   interest.  For the following reasons, the court finds that it does.

28   As has already been pointed out, FOIA "mandates a policy of broad disclosure of government

documents." *Church of Scientology*, 611 F.2d at 741.  Indeed, when enacting FOIA, "Congress recognized that no statute effectively provided for disclosure to the public by the 'hundreds of [governmental] departments, branches and agencies which are not clearly responsible to the people.'" *Kubik*, 2011 WL 2619538, at *1 (quoting *SDC Dev. Corp. v. Mathews*, 542 F.2d 1116, 1119 (9th Cir. 1976)).  "Congress believed that 'the public as a whole has a right to know what its Government is doing.'" *Id.* (quoting *SDC*, 542 F.2d at 1119).  In light of this policy, courts have found that "'there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate,'" *Elec. Privacy Information Center v. Dep't of Justice*, 416 F. Supp. 2d 30, 42 (D.D.C. 2006) (quoting *Jacksonville Port Auth.  v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977)), and in the expeditious release of documents requested pursuant to FOIA "because it furthers FOIA's core purpose of 'shed[ding] light on an agency's performance of its statutory duties,'" *id.* (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Here, Defendants' duties include determining whether asylum should be granted individuals who seek it.  The public has an interest in Defendants' performance of this duty.  *See Hajro*, 832 F. Supp. 2d at 1108 ("[T]he effect on the public of disclosure or nondisclosure is substantial where the information sought not available through any other means, as is the case for [the alien plaintiff] and for [his attorney] and other attorneys requesting documents from their clients' alien registration files.").  The court agrees with Mr. Martins that release of the interview notes will allow him to determine whether Defendants' decision to deny asylum may have been based on misunderstandings during his clients' interviews.  Reply, ECF No. 23 at 17.  Accordingly, the court finds that entry of a preliminary injunction is in the public interest.

**E. The Injunctive Relief Ordered**

Having determined that a preliminary injunction is warranted, the court must determine what, exactly, the preliminary injunction should do.  This determination is left to the court's discretion. *See Mayo v. United States Gov't Printing Office*, 839 F. Supp. 697, 700 (N.D. Cal. 1992) ("[T]he Supreme Court has made clear that, despite [FOIA's] statutory authorization for injunctive relief, the district court must still exercise its sound discretion in granting injunctive relief.").

Mr. Martins asks the court to require Defendants to disclose the interview notes to him in short

order, while Defendants suggest that the production of a *Vaughn* index is the next step.  In the

context of this case, and on this record, the court believes that it can fashion a process to suit all

parties' interests.  The Supreme Court has stated that "FOIA was not intended to function as a

private discovery tool, . . . [and] we cannot see how FOIA's purposes would be defeated by

deferring disclosure until after the Government has 'presented its case in court.'"  *Robbins Tire &*

*Rubber Co.*, 437 U.S. 214, 242 (1978) (emphasis in original); *see Lewis v. IRS*, 823 F.2d 375, 380

(9th Cir. 1987).  The way that Defendants are to present their case in court is through a *Vaughn*

index.  *See Founding Church of Scientology of Washington D.C., Inc. v. Bell*, 603 F.2d 945, 947

(D.C. Cir. 1979) ("We have observed repeatedly that the *Vaughn* index is critical to effective

enforcement of FOIA.  Without such an index neither reviewing courts nor individuals seeking

agency records can evaluate an agency's response to a request for government records.") (footnote

omitted).[13]  Thus, to allow for a proper evaluation of Defendants' decision to withhold the interview

notes – while, at the same time, being mindful of Mr. Martins's legitimate need for the documents

very soon – the court will require Defendants to produce a *Vaughn* index in short order so that Mr.

Martins and the court can decide whether the interview notes, or any portions thereof, are properly

withheld.  The court understands that Mr. Martins alleges that Defendants have withheld the

---

[13] To the extent that the parties prefer the court to do an *in camera* review, the Ninth Circuit
has explained that such a review would not be appropriate at this time:

> *In camera* review of the withheld documents by the court is not an acceptable
> substitute for an adequate *Vaughn* index.  *In camera* review does not permit effective
> advocacy.  *See Doyle v. FBI*, 722 F.2d 554, 556 (9th Cir.1983); *Vaughn*, 484 F.2d at
> 825.  Therefore, resort to in camera review is appropriate only after "the government
> has submitted as detailed public affidavits and testimony as possible."  *Doyle*, 722
> F.2d at 556; *see also Ingle v. Dep't of Justice*, 698 F.2d 259, 266 (6th Cir. 1983) ("no
> court should consider in camera review if a *Vaughn* Index can adequately resolve the
> issue").  *In camera* review may supplement an adequate *Vaughn* index, but may not
> replace it.  *Cf. NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 98 S.Ct.
> 2311, 2318, 57 L.Ed.2d 159 (1978) ("*in camera* review . . . is designed to be invoked
> when the issue before the District Court could not be otherwise resolved").

*Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) (footnote omitted).

1   interview notes in their entirety and thus argue that a *Vaughn* index is unnecessary, but the court is

2   not so certain that Defendants argue (or will continue to argue) that the interview notes in their

3   entirety are subject to the deliberative process privilege (especially in light of Defendants'

4   suggestion that they produce a *Vaughn* index and the clear factual nature of the notes).[14]   That being

---

[14] As Mr. Martins correctly notes, a *Vaughn* index is not necessarily helpful where the agency withholds an entire category of documents on the ground that it per se falls within one of FOIA's Exemptions.  The Ninth Circuit explained:

> Consistent with its purpose, a *Vaughn* index is not required where it is not needed to restore the traditional adversary process.  Thus, in *Brown v. FBI*, 658 F.2d 71 (2d Cir. 1981), the Second Circuit held that a *Vaughn* index was not required because the FOIA requester had acquired sufficient facts to permit the adversary process to function.  *Id.* at 74.  Similarly, in *Lewis v. Internal Revenue Service*, 823 F.2d 375 (9th Cir. 1987), we held that a *Vaughn* index was not required because the entire class of documents requested was *per se* exempt from disclosure regardless of the content of each withheld document.  *Id.* at 380.  The government gained no

1    said, and as the court said at the hearing, if the notes are similar to the examples in the record, *see*

2    Complaint, ECF No. 1, Exhs. B; Martins Declaration, ECF No. 18, Exhs. B, C, it is the court's

3    holding that the notes are not subject to the deliberative process privilege, and the court does not

4    expect them (or, at minimum, the facts in them) to be withheld on that ground.  Defendants had an

5    opportunity in its opposition to argue that the examples in the record (viewed in light of the training

6    given to Asylum Officers to take objective notes and omit subjective opinions, suppositions, or

7    inferences) support the application of the deliberative process exemption.  As discussed above,

8    Defendants did not do this.

9        Because Defendants made no argument or showing to counter Mr. Martins's showing that the

10   documents are factual, not subject to the deliberative process privilege, and critical to the asylum

11   process, the court's compromise – a *Vaughn* index for a small number of documents that can be

12   reviewed in a couple of hours – is not a burden but instead is an appropriate prioritization.  The

13   volume is only 162 pages for all ten cases, the United States Attorney's office has had all of the

14   notes since at least April 25, 2013, and (again) the likelihood is that the notes are factual and not

15   subject to the deliberative process privilege anyway.  *See* Burke Supplemental Declaration, ECF No.

16   24 at 2, ¶ 2; Government's Supplemental Submission, ECF No. 26 at 2.

17       The court divides the cases into two categories: category I (hearings in 2013 or – as represented

18   at the hearing by counsel with regard to C.S. – a recent denial with a short time to reopen) and II (for

19   later hearings).  The following chart shows the breakdown.

20

21

22

23

24

25

26   _____

27            advantage from access to material facts the FOIA requester lacked.

28   *Wiener v. FBI*, 943 F.2d at 977-78 n.5.  Here, because Defendants may not be making such a
     categorical withholding, the court believes that a *Vaughn* index will be helpful.

| Group | FOIA Request Date | Name | Merits Hearing | Number of Pages |
|---|---|---|---|---|
| I | 3/26/12 | N.S. | 7/12/13 | 12 |
| I | 4/12/12 | A.A.G. | 9/27/13 | 8 |
| I | 5/23/12 | C.S. | 6/21/13 (asylum denied) | 42 |
| I | 6/1/12 | K.L. | 8/19/13 | 7 |
| I | 6/15/12 | S.S. | 9/30/13 | 12 |
| I | 11/1/12 | M.A. | 11/16/13 | 18 |
| II | 5/1/12 | T.L. | 11/19/14 | 10 |
| II | 1/19/12 | Y.L. | 7/17/14 | 27 |
| II | 6/15/13 | E.E. | 3/2/15 | 7 |
| II | 7/27/12 | I.A. | 3/27/13 (asylum granted) | 19 |
|  | Total (Group I) |  |  | 99 |
|  | Total (Group II) |  |  | 63 |
|  | **Total (All)** |  |  | 162 |

As to category I, by July 9, 2013, Defendants shall produce to Mr. Martins and the court a *Vaughn* index for documents (or portions thereof) withheld with respect to Mr. Martins's clients with initials N.S, A.A.G., S.S., and M.A.  The court suggests a rolling production and in any event, Defendants should prioritize N.S.'s production.  If Mr. Martins objects to any withheld documents, the parties must meet and confer by July 10, 2013 and must file a joint letter brief (that must not exceed 5 pages) by July 10, 2013 at 4 p.m. that describes the parties' respective positions and suggestions for compromise.  The court sets a hearing for any dispute for July 11, 2013, at 11 a.m.

As to category II, by July 15, 2013, Defendants must produce to Mr. Martins and the court a *Vaughn* index for documents (or portions thereof) withheld with respect to Mr. Martins's clients with initials T.L., E.E., and Y.L.  If Mr. Martins objects to any withheld documents, the parties must meet and confer by July 16, 2013 and must file a joint letter brief (that must not exceed 5 pages) by July 17, 2013 at noon that describes the parties' respective positions and suggestions for compromise.

1

## CONCLUSION

2       The court **GRANTS** Mr. Martins's motion for a preliminary injunction and **ORDERS** the

3  parties to comply with the injunctive relief described above.

4       This disposes of ECF No. 17.

5       **IT IS SO ORDERED.**

6  Dated: July 3, 2013

_____
LAUREL BEELER
United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California